**Chris WILKERSON, Plaintiff–Appellant,**

**v.**

**The STATE of Colorado; Roy Romer, Governor of the State of Colorado, in his official capacity; Walter L. Kautzky, Executive Director of the Colorado Department of Corrections, in his official capacity; and the Colorado Department of Corrections, a department of Colorado state government, Defendants–Appellees.**

**No. 90CA1703.**

Colorado Court of Appeals,
Div. II.

March 12, 1992.

Rehearing Denied April 16, 1992.

Frank & Finger, P.C., William S. Finger, M. Hollace van Kleeck, Evergreen, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Arnold, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge HUME.

Plaintiff, Chris Wilkerson, appeals from the summary judgment entered in favor of defendants, the State of Colorado; Governor Roy Romer; Walter L. Kautzky, Executive Director of the Colorado Department of Corrections; and the Colorado Department of Corrections. Additionally, plaintiff appeals the judgment entered upon a jury verdict in favor of the State on his claim for unpaid sick leave, and the denial of interest on his vacation time. We affirm in part and reverse in part.

Pursuant to Colo.Sess.Laws 1977, ch. 223, § 17-2-201 at 911-14 (old parole board statute), plaintiff was appointed as a member of the State of Colorado Parole Board (Board) on June 25, 1984, for a six-year term. However, by Colo.Sess.Laws 1985, ch. 142, § 17-2-201 at 637-38 (H.B. 1292), the General Assembly abolished the existing Board and recreated a new board effective July 1, 1987. Thus, plaintiff's appointment ended June 30, 1987, and he was not appointed to the new Board, nor was he offered alternative employment with the state.

I.

A.

Plaintiff first contends that he had a property interest in his appointment to the Board and that he was deprived of this right without due process of law under the Fifth and Fourteenth Amendments and Colo. Const. art. 2, § 25. We disagree.

The requirements of procedural due process apply only to the deprivation of a liberty or property interest protected by the Fourteenth Amendment. Property interests are not created by the Constitution,

but rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Adams County School District No. 50 v. Dickey,* 791 P.2d 688 (Colo.1990) (sufficiency of claim of entitlement determined by reference to state law).

To have a property interest in a benefit, a person must have more than an abstract need or desire for it and must have more than a unilateral expectation of it. Instead, he must have a legitimate claim of entitlement to it. *Board of Regents v. Roth, supra.*

Thus, in alleging a deprivation of due process, plaintiff must first demonstrate the existence of the property interest which enables him to assert the constitutional claim and the basis of his entitlement to it. *See Ellis v. City of Lakewood,* 789 P.2d 449 (Colo.App.1989)

Here, plaintiff claims the basis of his property interest was the old parole board statute and an executive order from Governor Lamm appointing him to a six-year term on the Board.

While such basis may, in some circumstances, show there to be a property interest, here, much of plaintiff's argument is premised on the characterization of his position on the Board as an "employee," and we conclude that his status was that of an "officer." Hence, we further conclude he had no property interest in his position.

There is a distinction between an "officer" and an "employee." The term "office" implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office. *Corfman v. McDevitt,* 111 Colo. 437, 142 P.2d 383 (1943).

"Officer" is distinguished from "employee" in the greater importance, dignity, and independence of the former position; in an officer being required to take an official oath, and perhaps give an official bond; and usually, though not necessarily, in the tenure attached to such position. *Hudson*

*v. Annear,* 101 Colo. 551, 75 P.2d 587 (1938); *see also Evert v. Ouren,* 37 Colo. App. 402, 549 P.2d 791 (1976) (terms "officer" and "employee" are not interchangeable); 63A Am.Jur.2d *Public Officers and Employees* § 2 (1984) (a public officer is such an officer as required by law to be elected or appointed).

The old parole board statute provided for appointments to the Board by the Governor and for fixed six-year terms of "office." In addition, Colo. Const. art. 12, § 13, exempts state parole board members from the state personnel system. Thus, we conclude plaintiff is properly characterized as an "officer," rather than an "employee."

As an officer, plaintiff has no property interest in his office. *People v. Lindsey,* 80 Colo. 465, 253 P. 465, *cert. denied,* 274 U.S. 757, 47 S.Ct. 767, 71 L.Ed. 1336 (1927) (there is no property interest in a statutory public office). However, plaintiff argues that the validity of *Lindsey* has been superseded by subsequent cases. We disagree.

The rule that a public officer has no property or vested interest in public office remains well-established. *See Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Elam v. Williams,* 753 F.Supp. 1530 (D.Kan.1990), *aff'd,* 953 F.2d 1391 (10th Cir.1992); *Beck v. County of Santa Clara,* 204 Cal.App.3d 789, 251 Cal.Rptr. 444 (1988); *Slawik v. State,* 480 A.2d 636, 644 (Del.1984) (fn. 9—citing cases from ten other jurisdictions); *State v. Seigler,* 230 S.C. 115, 94 S.E.2d 231 (1956); *State v. Morton,* 140 W.Va. 207, 84 S.E.2d 791 (1954); *see also* 63A Am.Jur.2d *Public Officers and Employees* § 8 (1984).

Thus, because plaintiff did not have a property interest in his office, the procedural protections of due process were not applicable.

**B.**

Plaintiff alternatively contends that he had a contract, either express or implied, with the State. We also reject this contention.

There is no contractual relation between the state and the incumbent of an office. *People v. Lindsey, supra.* Nor was there an enforceable right based on promissory estoppel.

■ Promissory estoppel is applied to prevent injustice under circumstances in which there has not been mutual agreement by the parties on all essential terms of a contract, but a promise was made which the promisor should reasonably have expected would induce action or forbearance, and the promise in fact induced such action or forbearance. *Vigoda v. Denver Urban Renewal Authority,* 646 P.2d 900 (Colo.1982); *see also Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo. 1987) (application of promissory estoppel doctrine in employment situation).

■ As noted, plaintiff's reliance must be reasonable in order to establish an equitable estoppel. Here, H.B. 1292 clearly indicated that the existing Board was to be abolished and a new Board created.

Plaintiff claims that he relied on promises which were made or implied by Governor Lamm and his staff. However, it was Governor Romer, not Governor Lamm, who was to appoint members to the new Board. It was not reasonable for plaintiff to rely on any assurances made by Governor Lamm and his staff to create an expectation for his reappointment to the new Board. *See Elam v. Williams, supra* (not reasonable to rely on assurances from elected official for continued employment); *Averitt v. Cloon,* 796 F.2d 195 (6th Cir. 1986) (promise by elected public official to make political appointment does not provide basis for reasonable expectation of employment).

Moreover, plaintiff's reliance was also unreasonable because the General Assembly retains the right to abolish a statutory office, modify duties, and shorten or lengthen the terms of office. *See Higginbotham v. City of Baton Rouge,* 306 U.S. 535, 59 S.Ct. 705, 83 L.Ed. 968 (1939). Since it was within the General Assembly's power to cut short his term, it was unreasonable for plaintiff to expect that his tenure under the old parole board statute would continue. Thus, we reject plaintiff's contention that he had an implied contract with the state either for continued or renewed employment.

In view of our determination that plaintiff has no protected property interest, we need not address his contention that the court erred in holding that his claim based upon a deprivation of a property right was barred by operation of the statute of limitations.

II.

Plaintiff next contends that he stated a valid claim of racial discrimination actionable under 42 U.S.C. § 1983 (1988) against defendants Romer and Kautzky. We disagree.

■ Initially, we note that neither a state nor a state official acting in his or her official capacity is a "person" who is subject to suit for damages under § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, state officials sued for damages in their personal or individual capacities are "persons" within the meaning of § 1983. *Hafer v. Melo,* — U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

To state a claim for relief under § 1983, a claimant must allege that: (1) some person deprived him of a right, privilege, or immunity secured by the federal constitution; and (2) that such person acted under color of state law. *Dillingham v. University of Colorado Board of Regents,* 790 P.2d 851 (Colo.App.1989).

■ However, § 1983 is not itself the source of any substantive rights. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Montoya v. City of Colorado Springs,* 770 P.2d 1358 (Colo.App.1989). It merely provides a way in which a person can seek redress when his federal constitutional rights have been deprived under color of state law.

■ Here, plaintiff based his claim on 42 U.S.C. § 1981 (1988) and the allegation that he was not appointed to the new Board

because of impermissible racial discrimination. Prior to its amendment in November 1991, § 1981 protected two rights: the right to make contracts and the right to enforce contracts. The first protection prohibited a racially based refusal to enter into a contract with someone, as well as an offer to make a contract only on discriminatory terms. The second right prohibited discrimination that infected the legal process in ways that prevented one from enforcing contract rights. *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

■ Section 1983 provides the exclusive federal damages remedy against a state actor for the violation of the rights guaranteed by § 1981. *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

■ As noted earlier, plaintiff was an officer and not an employee. There is no contractual relation between the state and a statutory office-holder. *People v. Lindsey, supra*. Because § 1981 forbids discrimination in the *making and enforcement of contracts* alone, and because plaintiff had no contractual rights in his office, § 1981 provides no relief.

■ Plaintiff alternatively argues that he had an actionable claim under § 1981 because he, a black, was not promoted to the new Board. However, the question of whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. Only if the promotion rises to the level of an opportunity for a new and distinct contractual relation between employer and employee is such a claim actionable under § 1981. *Patterson v. McLean Credit Union, supra*. Because the relationship between plaintiff and the state was neither contractual nor an employer-employee relationship, this claim is likewise not actionable under § 1981.

Moreover, even if we were to assume, *arguendo*, there was an actionable § 1981

claim, defendants Romer and Kautzky are entitled to qualified immunity.

■ The doctrine of qualified immunity recognizes the conflicting interests of a need for a damage remedy to protect the rights of citizens, the need to protect public officials who are required to exercise their discretion, and the related public interest in encouraging the exercise of official authority without fear of unwarranted economic reprisal. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A constitutional right is "clearly established" if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ The plaintiff carries the burden of convincing the court that the law was "clearly established." When a claim for qualified immunity is raised on a motion for summary judgment, the court must give the plaintiff a limited opportunity allowed by C.R.C.P. 56 to come forward with averments of fact sufficient to show both that the defendant's conduct violated the law and that the law was clearly established when the alleged conduct occurred. Unless such a showing is made, the defendant prevails. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642 (10th Cir.1988).

■ Here, plaintiff's proffered evidence failed to demonstrate the existence of any clearly established right of employment or protected contractual right which was violated by the individual defendants' conduct. Hence, we find no basis justifying penetration of the shield of qualified immunity afforded to these defendants.

While the question of qualified immunity generally turns on objective factors, *Harlow* does not preclude inquiry into subjective factors when the applicable substantive law makes the official's state of mind an essential element of plaintiff's claim. *Pueblo Neighborhood Health Centers, Inc. v. Losavio, supra.*

Here, the racial animus claim requires that plaintiff prove defendants acted with an improper motive in not appointing him to the new Board. However, the evidence proffered showed that a former white Board member was also not reappointed. Further, one former Board member who was reappointed had a right to return to a position in his former classification pursuant to § 24–50–137(4), C.R.S. (1988 Repl. Vol. 10B), and another former Board member was temporarily appointed as a hearing officer for the new Board because of his training and qualifications as a lawyer. Additionally, the new appointments to the Board included three white men, a black woman, and an Hispanic man. We conclude, on the basis of this evidence, that plaintiff failed to produce evidence of racial animus, and therefore, summary judgment was proper.

## III.

Plaintiff next contends that he was entitled to interest on his claim for unpaid vacation leave. We agree.

Plaintiff last worked for the State in June 1987. More than two years later, during the pendency of this suit, defendants became aware that plaintiff had been underpaid for a portion of his accumulated vacation leave. The State unilaterally tendered a check for the disputed amount without interest. Plaintiff did not cash the check and claimed that interest was due on the unpaid amount. The trial court held that the issue was moot.

Plaintiff claims that, by such holding, he was deprived of statutory interest on the unpaid amount. We agree.

Relying on *Shumate v. State Personnel Board*, 34 Colo.App. 393, 528 P.2d 404 (1974) and *Dietemann v. People*, 78 Colo. 92, 239 P. 1020 (1925), the State argues that an award of pre-judgment interest is not permitted on a judgment against the State unless expressly authorized by statute.

However, statutory interest on a judgment is expressly provided for in § 5–12–102, C.R.S. (1991 Cum.Supp.). Nothing in § 5–12–102 precludes the award of pre-judgment interest upon a judgment against the State. *Passarelli v. Schoettler*, 742 P.2d 867 (Colo.1987); *see also Lee v. Colorado Department of Health*, 718 P.2d 221 (Colo.1986) (interest on judgment allowed in context of tort claim pursuant to Colorado Governmental Immunity Act). Thus, we conclude that pre-judgment interest should have been included and that the trial court erred in declaring the issue moot.

## IV.

Plaintiff finally contends that the trial court erred with respect to several procedural and evidentiary rulings as to unpaid sick leave. First, he contends that the court erred in quashing two of his subpoenas to witnesses. We disagree.

C.R.C.P. 45(c) provides that a subpoena "shall be served no later than *48 hours* before the time for appearance set out in said subpoena." (emphasis added) C.R.C.P. 6(a) provides in pertinent part:

[T]he day of the act, event, or default from which the designated period of time begins to run shall not be included.... When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.

Here, the witnesses were served between 10:40 a.m. and 11:00 a.m. on Friday, June 22, 1990. The subpoenas directed the witnesses to appear on Monday, June 25, 1990, at 9:00 a.m. Because the subpoenas were not served within the time limits prescribed by C.R.C.P. 6(a) and 45(c), they were properly quashed.

Plaintiff also claims that the court erred in refusing to allow a witness to

testify under CRE 608 regarding the character of a witness for truth, honesty, and veracity.

The admissibility of character evidence of a witness is limited to showing his character for truth and veracity; impeachment may not be accomplished by attacking the general character of the witness. CRE 608(a); *People v. Cole,* 654 P.2d 830 (Colo. 1982).

The admissibility of evidence is within the sound discretion of the trial court, and its ruling relative thereto will not be disturbed on review absent an abuse of that discretion. *People v. Henry,* 195 Colo. 309, 578 P.2d 1041 (1978).

Here, plaintiff sought to introduce evidence of a witness' character, and the trial court excluded it. Because the proffered evidence dealt with the witness' general character rather than being limited to his truthfulness and veracity, we conclude there was no abuse of discretion in disallowing its admission.

The summary judgment dismissing plaintiff's claims predicated upon an employment contract, promissory estoppel, and violation of 42 U.S.C. §§ 1981 and 1983 is affirmed. The judgment denying plaintiff's claim for accrued sick leave is also affirmed. That portion of the judgment denying an award of interest on the late payment of accrued vacation time is reversed, and the cause is remanded with instructions to award statutory interest on the accrued amount of $209.80 from the date of termination until the date of tender of payment.

SMITH and NEY, JJ., concur.