Norma Jean REA, Plaintiff–Appellant,

v.

Judy MATTEUCCI, individually and in her official capacity as Director of Department of Administration of the State of Nevada; Brian Nix, individually and in his official capacity as Senior Appeals Officer, Department of Administration, State of Nevada, Defendants–Appellees.

No. 96–16154.

United States Court of Appeals, Ninth Circuit.

Submitted July 17, 1997.*

Decided July 31, 1997.

---

than the wages the former employees would have earned for two weeks as CVS employees.

* This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Jeffrey A. Dickerson, Reno, NV, for plaintiff–appellant.

James T. Spencer, Senior Deputy Attorney General, Carson City, NV, for defendants–appellees.

Before: CHOY, HALL, and WIGGINS, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiff Norma Jean Rea appeals from the district court's grant of summary judgment for defendants on plaintiff's claim for violation of due process under color of state law. *See* 42 U.S.C. § 1983. We have jurisdiction, 28 U.S.C. § 1291. We review a grant of summary judgment de novo. *E.g., Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Because plaintiff was accorded all the process she was due, we AFFIRM.

## I. Facts

Prior to June 18, 1993, plaintiff was employed as a hearing officer for the state of Nevada; pursuant to statute, her position was classified as permanent, and she could be terminated only for just cause. On June 18, 1993, the Nevada legislature enacted Senate Bill 316 ("SIIS Act"), which revised the entire State Industrial Insurance System. The SIIS Act removed the position of hearing officer from classified service and put the position into the unclassified service of the State of Nevada, thereby removing the permanent status of the job. The section changing the status of this position was one of 294 sections of the SIIS Act.

On July 20, 1993, senior hearing officer, defendant Brian Nix, advised Rea that she would be terminated. On July 26, 1993, defendant Judy Matteucci, advised Rea in writing that she would be terminated effective August 3, 1993. On August 4, 1993, Rea was terminated. Rea filed this suit on August 4, 1995, naming only Nix and Matteucci as defendants, both individually and in their official capacities.

Rea claims that the Nevada legislature's reclassification of plaintiff's position as a hearing officer to an at will office, and her subsequent termination from employment, violate her Fourteenth Amendment due process rights.

## II. Analysis

A state cannot deprive a person of property without according her due process. U.S. Const. amend. XIV. A property entitlement, such as that of continued employment in a state job, is grounded in state law. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1154–55, 71 L.Ed.2d 265 (1982).

Here, plaintiff had a property interest in her continued employment as a hearings officer, until the position was reclassified pursuant to a statute adopted by the Nevada Legislature and signed into law by the Governor. Plaintiff claims she was deprived of

due process when her position was reclassified, allowing for her subsequent termination.

■ A state has control over the offices it creates. A state legislature may "at [its] pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service." *Higginbotham v. City of Baton Rouge*, 306 U.S. 535, 538, 59 S.Ct. 705, 706, 83 L.Ed. 968 (1939). The Nevada Supreme Court has held that Nevada's legislature may modify or abolish any state office. *Shamberger v. Ferrari*, 73 Nev. 201, 314 P.2d 384 (1957). When a state alters a state-conferred property right through the legislative process, "the legislative determination provides all the process that is due ..." *Logan*, 455 U.S. at 433, 102 S.Ct. at 1156; *accord Gattis v. Gravett*, 806 F.2d 778, 781 (8th Cir.1986) (holding that legislative alteration or elimination of previously conferred property interest does not violate due process). Thus, the legislative process is sufficient to comport with minimal federal due process requirements.

■ This rule does not eviscerate all due process rights of plaintiff here. A federal interest remains in "protecting the individual citizen from state action that is wholly arbitrary or irrational." *Logan*, 455 U.S. at 433, 102 S.Ct. at 1156 (citation omitted). Similarly, an individual claiming a defect in the legislative process might have a claim for due process violations. *See Atkins v. Parker*, 472 U.S. 115, 130, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985).

Plaintiff cites two cases where the legislative process did not suffice to protect the plaintiff's due process rights. In *Conway v. Sorrell*, 894 F.Supp. 794 (D.Vt.1995), the plaintiffs presented evidence that the legislation was targeted at them individually and that the legislative process was defective because it was aimed at the individual plaintiffs. In *Darling v. Kansas Water Office*, 245 Kan. 45, 774 P.2d 941 (1989), the plaintiffs were also individually targeted. The court based its reasoning on the fact that the bill was not generally applicable, but rather affected seventeen "known and identifiable individuals." *Id.* 774 P.2d at 941. Although neither of these cases binds this court, they are instructive as to the type of defect a legislative process must have before it can violate an affected person's due process rights.

■ Thus, if plaintiff could show that the legislation here was arbitrary or irrational, or that the legislative process was defective, she would have a triable issue of fact as to whether she had been denied due process. Plaintiff has failed to produce any such evidence. The legislation here was broad and did not target any individuals.

The Supreme Court has explained that where a rule "applies to more than a few people, it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard." *Bi–Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915). Individuals affected by generally applicable laws are accorded access to the legislative process "by their power, immediate or remote, over those who make the rule." *Id.*

The state was entitled to alter its employment classifications, and it did so through the legislative process. Plaintiff has produced no evidence that this process was defective, or that the legislation was arbitrary. The district court correctly granted summary judgment for defendant.

AFFIRMED.