**Richard L. BUFORD, Plaintiff,**

v.

**J. Mac HOLLADAY, et al., Defendants.**

Civ. A. No. J89–0233(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 20, 1992.

Whitman B. Johnson, III, Michael F. Myers, Steen Reynolds Dalehite & Currie, Jackson, Miss., for plaintiff.

Mary Margaret Bowers, Richard D. Mitchell, James F. Steel, Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment, and Plaintiff's Cross Motion for Partial Summary Judgment. On June 5, 1990, the United States Magistrate Judge consolidated the present action, for discovery purposes only, with *George A. George v. Holladay, et al.*, Civil Action No. J89–0234 (B); *Ginger A. Croce v. Holladay, et al.*, Civil Action No. J89–0235 (B); *Joe D. Leach v. Holladay, et al.*, Civil Action No. J89–0236 (B); *Kenneth J. Goodwin v. Holladay, et al.*, Civil Action No. J89–0237 (B); and *Joyce W. Lewis v. Holladay, et al.*, Civil Action No. J89–0238 (B), because all cases involved similar claims and questions of law. On June 27, 1990, all of the above cases were reassigned to this Court. The Court finds, therefore, that this Memorandum Opinion and Order entered in the present action, *Buford v. Holladay, et al.*, Civil Action No. J89–0233 (B), is binding on all related actions listed above to the extent that all cases involve the same claims, the same Defendants, and the same questions of law, except where the Court notes material factual distinctions. For purposes of clarity, the Court will refer to Plaintiffs in the plural form in this Memorandum Opinion and Order unless the Court otherwise distinguishes between Plaintiffs.

All parties have responded to the respective Motions. The Court, having considered the Motions and responses, along with memoranda of authorities and attachments thereto, is of the opinion that Defendants' Motions should be granted with respect to Plaintiffs' due process claims, and should be denied with respect to Plaintiffs' age discrimination claims.

## I. Facts and Procedural History

On or about May 16, 1988, the Legislature of the State of Mississippi approved Senate Bill 2925, which was subsequently signed by Governor Ray Mabus and enacted under Mississippi General Laws of 1988, Chapter 518. Chapter 518 was codified at Miss.Code Ann. § 57–1–1 *et seq.* Chapter 518 provided as follows:

> SECTION 1. (1) The Mississippi Research and Development Center is hereby abolished from and after July 1, 1988. All of the functions of the center shall be transferred on that date to the Mississippi Department of Economic Development or to the University Research Center, which is created in Section 3 of this act.

Subsections (2)(a) and (b) and (3)(a) of Section One, Chapter 518, transferred functions and personnel in accordance with the abolition of the Research and Development Center as follows:

> (2)(a) From and after July 1, 1988, the duties and responsibilities of the Research and Development Center which are depicted organizationally in the 1989 fiscal year budget request of the Research and Development Center and which are performed by [various divisions] ... shall be transferred to the University Research Center.
>
> (2)(b) From and after July 1, 1988, the duties and responsibilities of the Research and Development Center not included in the transfer described in paragraph (a) except as provided in (3)(c) of this subsection shall be transferred to the Mississippi Department of Economic Development.
>
> (3)(a) All personnel of the Mississippi Research and Development Center shall be transferred to the Department of Economic Development or to the University Research Center according to the transfer of their duties pursuant to this section.

In sum, Chapter 518, Section One abolished the Mississippi Research and Development Center ("R & D Center"), reorganized the Department of Economic Development[1] into a new department that included some functions that were formerly performed by the R & D Center, and transferred the remainder of the functions formerly performed by the R & D Center to the University Research Center. Chapter 518, in addition, transferred employees of the R & D Center to the Department of Economic Development or to the University Research Center in accordance with the transfer of the functions.

The provisions of Chapter 518 that form the crux of the present action, however, deal with the reorganization of the Department of Economic Development. Subsection (3)(d) of Section One provided as follows:

> (3)(d) It is the intention of the Legislature that there be a reduction in personnel where there is a duplication of effort as a result of the transfers required by this subsection. The Department of Economic Development in its reorganization pursuant to this Act may utilize savings realized from personnel attrition and other economies to reallocate and reclassify positions within the department, subject to the approval of the State Personnel Board.

Subsection (6) of Section 28 provided in pertinent part as follows:

> The executive director of the department shall be responsible for staffing the department with persons meeting established qualifications for comparable positions of duty and responsibility including, but not limited to, associate directors, deputy directors and bureau directors ... For a period of one (1) year after the effective date of this act [July 1, 1988] the personnel actions of the department shall be exempt from the State Personnel Board Procedures in order to give the department flexibility in making an orderly, effective and timely transition to the mandated reorganization. (Date supplied).

---

1. The Department of Economic Development was renamed the Department of Economic and Community Development, effective July 1, 1989.

*See* Miss.Code Ann. § 57–1–2 and Miss.Code Ann. § 57–1–52. The name change took effect subsequent to the enactment of Chapter 518.

Subsection (6) of Section 28 was codified at Miss.Code Ann. § 57–1–5(6) and was in effect during the time period in issue from July 1, 1988 to July 1, 1989. In reliance on Section One, Subsection (3)(d) and Section 28, Subsection (6), Defendant J. Mac Holladay, Executive Director of the Department of Economic Development, embarked upon a reorganization program that encompassed Plaintiffs, all of whom were employed by the Department prior to the enactment of Chapter 518. On October 26, 1988, Defendant Holladay issued a memorandum to all employees of the Department of Economic Development that stated in pertinent part as follows:

> This will serve as your official notification that the property interest of employees of the Mississippi Department of Economic Development has been eliminated for a period of one year beginning July 1, 1988. In effect, this means that you are employed at the sole discretion of this Department and have no vested rights in employment. This action is taken pursuant to provisions set forth in Senate Bill 2925 as passed by the Regular Session of the Mississippi Legislature and approved by the Governor.

Plaintiff's Exhibit Q in *Buford v. Holladay, et al.* In a separate memorandum to Department employees on October 26, 1988, Defendant Holladay stated that budgetary constraints mandated the elimination of 15 positions, but noted that "virtually every job description has been rewritten" and positions would be "competitively realigned." *See* Plaintiff's Exhibit R in *Buford v. Holladay.* Department employees, according to Defendant Holladay, would have the "first opportunity" for employment in the restructured Department, and would be allowed to apply for a maximum of two positions by October 28, 1988. *Id.* Interviews would be conducted from October 31, 1988, through November 3, 1988, and job selections would be made on November 9.

Richard Buford, Plaintiff in *Buford v. Holladay, et al.,* held the position of Management Consultant in the Department of Economic Development. Plaintiff's Exhibit Q, Defendants' Exhibit 7 in *Buford v. Holladay, et al.* As a Management Consultant, according to Buford, Buford helped manufacturing firms identify and resolve management and financial problems, and assisted in business stabilization or expansion. Buford also contends that he helped businesses secure financing and equity capital. Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment at 7 in *Buford.* Buford applied for the position of Associate Manager Senior for Existing Business, and for a position as Associate Manager Senior in Research, but was not hired for either position. Buford was asked, but declined, to apply for the position of Associate Manager for Existing Business in Tupelo, Mississippi. Buford was 56 years old at the time of the reorganization.

Joyce Lewis, Plaintiff in *Lewis v. Holladay, et al.,* held the position of Small Business Information Coordinator in the Department of Economic Development. Lewis's duties included, but were not limited to, the planning, preparation and maintenance of seminar schedules and materials. Lewis applied for a position as an Administrative Assistant in the Department of Communications and Advertising and in the Department of Tourism, but was not hired for either position.[2] Lewis was 59 years old at the time of the reorganization.

George A. George, Plaintiff in *George v. Holladay, et al.,* was Director of the Research and Engineering Division and was a Senior Economic Analyst with the Department of Economic Development. George's duties included supervision and economic analysis. George applied for but was not hired as Manager of Research in the new Department, and refused to apply for the position of Research Analyst. George was 60 years old at the time of the reorganization.

---

**2.** Lewis contends, and Defendants dispute, that she also applied and was not hired for a position as a Word Processor/Receptionist.

Ken Goodwin, Plaintiff in *Goodwin v. Holladay, et al.*, held the employee designation of Civil Engineer III in the Department of Economic Development. Goodwin's duties, he contends, included preparing feasibility studies for industrial park development and engineering and location assistance for economic development. *See* Plaintiff's Memorandum Brief at 5. Goodwin, like George, was not hired as Manager of Research in the new Department, and was not hired for the position of Project Manager in the Corporate division. He applied for both of these positions. Goodwin was asked, but refused, to interview for a position as Associate Manager Senior in the Regional Office of the Department in Tupelo, Mississippi. Goodwin was 52 years old at the time of the reorganization.

Ginger Croce, Plaintiff in *Croce v. Holladay, et al.*, was the Acting Director of the Department of Tourism in the Department of Economic Development. Croce applied for but was not hired as Manager of Tourism Services in the new Department. Croce was 40 years old at the time of the reorganization.

Joe Leach, Plaintiff in *Leach v. Holladay, et al.*, was Acting Director of Research in the Department of Economic Development. Leach applied for the position of Manager of Existing Business and for the position of Manager of Entrepreneurial Development, but was not hired for either position. Leach refused to apply for a position as Associate Manager for Commercial Analysis in Greenwood, Mississippi.[3] Leach was 49 years old at the time of the reorganization.

On April 26, 1989, Plaintiffs filed separate Complaints in this Court pursuant to 42 U.S.C. § 1983 and § 1988 against Holladay, individually and in his official capacity as Executive Director of the Department of Economic Development; against Laura Mullens, individually and in her official capacity as Personnel Manager of the De-

partment of Economic Development; against Lynda Penton, individually and in her official capacity as Head of Research and Information Systems of the Department of Economic Development; against Mike Moore, in his official capacity as Attorney General of the State of Mississippi; against Ray Mabus, in his official capacity as Governor of the State of Mississippi; and against John/Jane Does 1–10. Plaintiffs allege that Defendants Holladay, Penton and Mullens violated Plaintiffs' due process rights by terminating Plaintiffs from the positions they previously held in the Department of Economic Development and failing to rehire them for positions in the reorganized Department of Economic Development, and seek an injunction requiring Defendants to rehire Plaintiffs for positions for which they applied with salaries and benefits commensurate with their pretermination compensation, as well as monetary relief in the form of backpay and lost benefits. Plaintiffs also seek what they term "compensatory damages" and punitive damages from Defendants Holladay, Penton and Mullens for alleged violations of Plaintiffs' due process rights. Plaintiffs seek an injunction under Section 1983 preventing Defendant Moore from enforcing Miss.Code Ann. § 57–1–5(6), the statutory codification of Chapter 518, and seek an injunction requiring Defendant Mabus to rehire Plaintiffs for positions applied for in the Department of Economic Development at their previous salaries plus raises, and to reinstate their employee benefits.[4] On May 11, 1989, Plaintiffs amended their Complaints to assert claims against all Defendants alleging discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiffs sue the State of Mississippi for attorneys' fees under 42 U.S.C. § 1988.

## II. Analysis

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that sum-

---

**3.** All Plaintiffs, with the exception of Leach, were notified on October 26, 1988, that they would need to apply for positions with the reorganized Department of Economic Development. Leach was notified on October 10 that his termination would be effective on November 4.

**4.** The Court notes that Defendants Holladay and Mabus no longer serve in their official capacities. Plaintiffs should therefore file Motions to Substitute if they seek injunctive relief against the officials who now serve in those capacities.

mary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State University*, 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122 (5th Cir.1988).

■ The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–2553. However, the movant need not support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–2553. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it

is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper merely where the court believes it unlikely that the non-moving party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

The parties' respective Motions present the following questions: (1) Did Defendants' failure to hire Plaintiffs for positions in the reorganized Department of Economic Development constitute a violation of Plaintiffs' due process rights; (2) Have Plaintiffs stated claims under the Age Discrimination in Employment Act sufficient to preclude the entry of Summary Judgment for Defendants?

The Court finds that Defendants' failure to hire Plaintiffs for positions in the reorganized Department of Economic Development did not constitute violations of Plaintiffs' due process rights, because the legislative process afforded all the process to which Plaintiffs were due, and accordingly grants Defendants' Motions for Summary Judgment on those claims. The Court finds that there are genuine issues of material fact regarding Plaintiffs' age discrimination claims, and accordingly denies Defendants' Motions for Summary Judgment on those claims.

## A. Due Process

### 1. *Jurisdiction under Section 1983*

■ Plaintiffs allege that Defendants violated Plaintiffs' substantive and procedural due process rights guaranteed by the fifth and fourteenth amendments to the United States Constitution when they were terminated, and invoke the jurisdiction of this Court under 42 U.S.C. § 1983 and § 1988.[5] Section 1983 provides in pertinent part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

5. Although Plaintiffs allege violations of substantive due process, their arguments are limit-

ed to procedural due process violations. *See, infra,* footnote 6.

to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...

The Court finds that jurisdiction is proper under Section 1983 because Plaintiffs have alleged a violation of a right secured by the Constitution.

■ Defendants argue that they cannot be sued under Section 1983 because in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court held that neither a state nor its officials acting in their official capacities are "persons" under Section 1983. The Court disagrees. The Supreme Court stated in *Will* that state officials sued in their official capacities are "persons" under Section 1983 because "official capacity actions for prospective relief are not treated as actions against the State." *Will,* 491 U.S. at 71, n. 10, 109 S.Ct. at 2311, n. 10. State officials, therefore, may be sued in their official capacities for injunctive relief under Section 1983, and may be sued in their individual capacities for monetary relief under Section 1983. The present actions are not suits against the State of Mississippi or any of its agencies and political subdivisions. They are suits seeking injunctive relief from individuals in their official capacities, and suits for monetary relief against individuals in their individual capacities. The Court accordingly finds that Defendants in the present actions are amenable to suit under Section 1983.

### 2. *Deprivation of a Property Interest Under Chapter 518*

■ Plaintiffs contend that they had a property interest in their employment with the Department of Economic Development. Plaintiffs argue, first of all, that Chapter 518 did not abolish Plaintiffs' property interest in continued employment, and that Defendants therefore violated Plaintiffs' procedural due process rights by failing to comply with the statutory procedural due process measures enumerated in Miss.Code Ann. § 25–9–127. In the alternative, Plaintiffs argue that even if Chapter 518 abolished Plaintiffs' property interest, Defendants owed Plaintiffs more process than Plaintiffs received.[6]

Plaintiffs rely on Miss.Code Ann. § 25–9–127 to support their proposition that they had a property interest in continued employment with the State of Mississippi that could not be taken away without affording them procedural due process. Miss.Code Ann. § 25–9–127 provides in pertinent part as follows:

No employee of any department, agency or institution who is included under this chapter or hereafter included under its authority, and who is subject to the rules and regulations prescribed by the state personnel system may be dismissed or otherwise adversely affected as to compensation or employment status except for inefficiency or other good cause, and after written notice and hearing within the department, agency or institution as shall be specified in the rules and regulations of the state personnel board complying with due process of law ... [T]his provision shall not apply (a) to persons separated from any department, agency or institution due to curtailment of funds or reduction in staff when such separation is in accordance with rules and regulations of the state personnel system ...

---

**6.** Plaintiffs allege in their Complaints that Defendants violated Plaintiffs' "substantive and procedural Due Process." Plaintiffs' Complaints, Paragraph 16. In Plaintiffs' Memorandum Brief in Support of Cross Motion for Summary Judgment, however, Plaintiffs argue that they were entitled to "receive due process," but Plaintiffs do not specify whether Defendants violated Plaintiffs' substantive or procedural due process rights. An examination of the nature of Plaintiffs' allegations, however, reveals that Plaintiffs are alleging that Defendants violated Plaintiffs' rights to procedural due process. By arguing that "[t]he defendants deprived the plaintiffs of their constitutionally protected property interests without affording them any due process whatsoever and without giving them the appeal rights to which they were entitled," Plaintiffs' Memorandum Brief at 22, Plaintiffs are alleging procedural due process violations.

Miss.Code Ann. § 25–9–107 defines state service employees as "all employees of state departments, agencies and institutions as defined herein, except those officers and employees excluded by this chapter." Miss.Code Ann. § 25–9–107(b). Plaintiffs therefore contend that they were state service employees with property interests in state employment which could not be taken away without compliance with the procedures enumerated in Miss.Code Ann. § 25–9–127.

The Court assumes for the purpose of deciding the Motions presented that Plaintiffs had a property interest in their employment with the Department of Economic Development. However, the Court finds that Chapter 518 abolished any property right that may have existed, regardless of whether any such property right previously existed.

Plaintiffs rely on Section 1(3)(d) of Chapter 518 to support their argument that the statute did not abrogate their property interests in continued employment. Section 1(3)(d) provided in pertinent part that the Department of Economic Development, in its reorganization, could reclassify "positions" within the Department of Economic Development "subject to the approval of the State Personnel Board." Plaintiffs contend that this section clearly mandates the continued recognition of their property interest in employment.

Plaintiffs further rely on Section 1(3)(e) of Chapter 518, which provided that personnel transferred to the University Research Center would "retain all of the protection and benefits to which they have been entitled under the state personnel system." Plaintiffs argue that Section 1(3)(e), by implication, meant that Department of Economic Development employees would retain their property interest.

Plaintiffs, however, ignore the explicit language in Section 28(6) of Chapter 518. Section 28(6) exempted the "personnel actions" of the Department of Economic Development from State Personnel Board Procedures "to give the department flexibility in making an orderly, effective and timely transition to the mandated reorganization." Section 28(6) therefore abolished any property interest that Plaintiffs may have had in employment with the Department of Economic Development.

Section 28(6) and Section 1(3)(d) addressed two distinct matters. Section 1(3)(d) applied to the reclassification of *positions* within the Department, and stated that *positions* could not be reclassified without first complying with state personnel board procedures. Section 28(6), on the other hand, applied to actions involving *personnel.* Under Section 28(6), personnel could be terminated in accordance with the reorganization mandated by Chapter 518. The difference between the two sections is the difference between a job classification and the person holding the job classification. Under Section 28(6), a person holding a particular job classification was subject to termination, but under Section 1(3)(d), the job classification could not be modified without compliance with the procedures of the State Personnel Board.[7] The Court, therefore, finds that Chapter 518 abolished Plaintiffs' property rights in continued employment with the Department of Economic Development.

### 3. What Process Was Due When Chapter 518 Was Enacted?

Having determined that Chapter 518 extinguished any property interests that Plaintiffs may have had in employment with the Department of Economic Development, the Court must now determine what process, if any, was owed Plaintiffs when the legislature enacted Chapter 518. The Court finds that the legislature, which created the property interest allegedly held by Plaintiffs, could rescind the same property interest, and the legislative process afforded Plaintiffs all the process required by the Constitution. Accordingly, because Plaintiffs had no property interest which Defendants could have abrogated, the Court finds that Defendants did not

---

7. Presumably, reclassifying a position might entail salary modification and other changes that would need, at the least, to pass muster under established procedures.

violate Plaintiffs' right to procedural due process.

■ A general two-part inquiry governs procedural due process issues: first, whether a party had a property interest of which he was deprived; and second, if a party was deprived of a property interest, what process was his due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–1154, 71 L.Ed.2d 265 (1982).

■ In the present actions, the Court must determine whether Plaintiffs had a protected property interest in their employment at the time of Defendants' allegedly wrongful actions. Property interests "are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), *quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). However, procedural due process "does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement of public benefits.'" *Atkins v. Parker*, 472 U.S. 115, 129, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985), *quoting Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971).

The Court has assumed, for the purposes of addressing the Motions of the parties, that prior to the enactment of Chapter 518 Plaintiffs had a property interest in employment with the Department of Economic Development, because State Personnel Board Procedures governed Plaintiffs' employment. *See* Miss.Code Ann. § 25–9–107 and Miss.Code Ann. § 25–9–127. As the Court has determined, however, Chapter 518 extinguished Plaintiffs' property interests in employment with the Department of Economic Development. Plaintiffs contend that the legislature, which bestowed a property interest on Plaintiffs, could not take away the same property interest without giving Plaintiffs "reasonable notice and hearing" and, in addition, "just compensa-

tion." *See* Plaintiffs' Memorandum Brief in Support of Their Cross Motion for Summary Judgment and in Response to Defendants' Motion for Summary Judgment. The Court disagrees. The State may amend or terminate property interests that it has created, such as transfer payment and employment programs and causes of action, without depriving the affected individuals of procedural due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). *See Atkins v. Parker*, 472 U.S. 115, 129–130, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985) (congressional decision to alter food-stamp benefits did not deprive former recipients of procedural due process). When a state extinguishes, through legislation, property interests, it is said that "the legislative determination provides all the process that is due." *Logan*, 455 U.S. at 433, 102 S.Ct. at 1156, *relying on Bi–Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–446, 36 S.Ct. 141, 142–143, 60 L.Ed. 372 (1915). *Accord, Atkins*, 472 U.S. at 130, 105 S.Ct. at 2529; *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir.1991) ("[E]ven if there were a protected property interest, plaintiffs were not deprived [sic] the process that was due them ... The legislature provided all the process that was due."); *County Line Joint Venture v. Grand Prairie, Tex.*, 839 F.2d 1142, 1144 (5th Cir.1988), *quoting* 2 R. Rotunda, J. Nowak & J. Young, *Treatises on Constitutional Law: Substance and Procedure*, § 17.8 at 251 (1986) ("When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process— the legislative process."); *Jackson Court Condominiums v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir.1989) ("[I]t is well established law that once an action is characterized as legislative, procedural due process requirements do not apply."); *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir.1986) ("When the legislature enacts a law, or a state agency adopts a regulation, that affects a general class of persons, all of those persons have received procedural due process by the legislative

process itself and they have no right to individual attention."); *Richardson v. Town of Eastover*, 922 F.2d 1152, 1158 (4th Cir.1991) ("Fairness (or due process) in legislation is satisfied when legislation is enacted in accordance with the procedures established in the state constitution and statutes for the enactment of legislation."); *Hoffman v. City of Warwick*, 909 F.2d 608, 619 (1st Cir.1990) ("Where the legislature enacts general legislation eliminating statutory rights or otherwise adjusting the benefits and burdens of economic life, in the absence of any substantive constitutional infirmity, 'the legislative determination provides all the process that is due.'").

*Gattis v. Gravett*, 806 F.2d 778 (8th Cir. 1986) is a case similar to the cases before the Court. *Gattis* involved an Arkansas statutory amendment that excluded "majors" in county sheriff offices from the definition of "personnel" covered by Arkansas civil service provisions. "Majors" were previously covered by civil service statutes, but after the amendment, they were to "serve at the pleasure of the sheriff." *Id.* at 779. Subsequent to the passage of the amendment, the defendant, a sheriff, terminated the plaintiffs, who were majors in the office of the sheriff, without affording the plaintiffs the notice and hearing procedures enumerated in Arkansas state civil service statutes. *Id.* The plaintiffs contended, and the district court agreed, that they had a property interest in continued employment. *Id.* at 780. On appeal, the Eighth Circuit reversed the district court, and held that the plaintiffs had suffered no due process violation because the statutory amendment extinguished their property right in continued employment. *Id.* Procedural due process, there-

fore, could not attach because the plaintiffs held no property rights at the time of termination. *Id.* The Court summarized the proposition on which it based its holding as follows:

> While the legislative alteration or elimination of a previously conferred property interest may be a 'deprivation,' the legislative process provides citizens with all of the 'process' they are 'due.' *Atkins v. Parker* [citation omitted]. *Accord Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432–33 [parallel citations omitted] (1982).... Thus the legislature which creates a property interest may rescind it, whether the legislative body is federal or state and whether the interest is an entitlement to economic benefits, a statutory cause of action or civil service job protections. By the time appellant discharged appellees, the Arkansas legislature had removed appellees' employment position from those entitled to civil service protections. Accordingly, the property interest previously conferred on civil service personnel had been extinguished as to a class of employees including majors in the offices of the Arkansas county sheriffs.

*Id.* at 781.

In the present actions, Plaintiffs held no property interest in continued employment with the Department of Economic Development after the passage of Chapter 518. As a result, Defendants could not violate Plaintiffs' right to procedural due process because Plaintiffs held no property interest of which they could be divested.[8] The legislative process, to use the parlance of the cases cited previously, afforded Plaintiffs all the process they were due.[9] The Court,

**8.** Because the Court finds that Defendants did not deprive Plaintiffs of a property interest, the Court need not address the question of Defendants' qualified good faith immunity. In a previous opinion entered in *Buford v. Holladay*, the action presently before the Court, the Court noted that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buford v. Holladay*, 133 F.R.D. 487, 495 (S.D.Miss.1990),

quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In the present actions, the Court holds that Defendants did not violate Plaintiffs' statutory or constitutional rights, and therefore need not determine whether Defendants acted in good faith.

**9.** The Court notes that *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), does not dictate a different result. In *Loudermill*, the Supreme Court rejected the positivistic "bitter with the sweet" approach articulated in the plurality opinion in

accordingly, grants Defendants' Motions for Summary Judgment on Plaintiffs' procedural due process claims.[10]

## B. Age Discrimination Claims

 Plaintiffs allege that Defendants discriminated against Plaintiffs because of their age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and specifically contend that they have been "adversely affected by defendants' employment decisions ... in terminating or 'non-selecting'" Plaintiffs. *See* Plaintiffs' Amendment to Complaints. The ADEA provides in pertinent part as follows:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623.

Addressing age discrimination claims in a motion for summary judgment involves, as the Fifth Circuit has stated, "nebulous questions of motivation and intent ... [that] depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder." *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 640–41 (5th Cir.1985). Because the ADEA is not easily susceptible of bright line rules of resolution, *Bienkowski v. American Airlines*, 851 F.2d 1503, 1506 (5th Cir.1988), summary judgment is generally regarded as an "inappropriate tool" for resolving age dis-

crimination claims. *Thornbrough*, 760 F.2d at 640.

Mindful of these words of caution, the Court finds that there remain genuine issues of material fact as to whether Defendants violated the ADEA. The Court accordingly denies Defendants' Motions for Summary Judgment as to the age discrimination claims of all Plaintiffs.

In sum, with regard to Plaintiffs' due process claims, the Court denies Plaintiffs' Motions for Partial Summary Judgment and grants Defendants' Motions for Summary Judgment in the present action and in the related actions discussed in this Memorandum Opinion and Order. With regard to Plaintiffs' age discrimination claims, the Court denies Defendants' Motions for Summary Judgment in the present action and in the related actions addressed in this Memorandum Opinion and Order.

IT IS THEREFORE ORDERED that Defendants' Motions for Summary Judgment with respect to Plaintiffs' due process claims in the present action and related actions be granted, and that Defendants' Motions for Summary Judgment with respect to Plaintiffs' age discrimination claims in the present action and related actions be denied.

SO ORDERED.

---

*Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Under the "bitter with the sweet" approach, the procedural mechanisms for enforcing a substantive right, and the substantive right itself, are inseparable. A party must therefore take the "bitter"—the procedural mechanisms—with the "sweet"—the substantive right.

As the Court has recognized, the so-called legislative due process doctrine is consistent with the rejection of the "bitter with the sweet" approach. *See Logan*, 455 U.S. at 432–433, 102 S.Ct. at 1155–1156. *See also Atkins*, 472 U.S. at 130, 105 S.Ct. at 2529. In *Loudermill* the plaintiff was deprived of procedural due process be-

cause the procedures specified by the state were insufficient to meet due process requirements. Unlike the present actions, the legislature did not take away the plaintiff's property interest. Rather, the plaintiff had a property interest and the Court deemed insufficient the procedures governing the property interest.

**10.** With respect to Plaintiffs' attempt to enjoin Defendant Mike Moore from enforcing the provisions of Miss.Code Ann. § 57–1–5(6), the Court finds that Plaintiffs' claim is moot because Miss.Code Ann. § 57–1–5(6) is no longer in effect.